IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MACARTON N. PIERRE, | No. 4:23-CV-02044 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| C.O. RICHARDS, *et al.*, | |
| Defendants. | |

MEMORANDUM OPINION

FEBRUARY 15, 2024

Plaintiff Macarton Pierre filed the instant *pro se* Section 1983[1] action, asserting constitutional violations by various prison officials and medical staff at Luzerne County Correctional Facility. The Court will dismiss in part Pierre's complaint under 28 U.S.C. § 1915A(b)(1) and will give him the option of filing an amended complaint or proceeding on his remaining claims.

I.   STANDARDS OF REVIEW

Courts are statutorily obligated to review, "as soon as practicable," *pro se* prisoner complaints targeting governmental entities, officers, or employees.[2] One basis for dismissal at the screening stage is if the complaint "fails to state a claim

---

[1]   42 U.S.C. § 1983.  Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials.  The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law.  *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

[2]   *See* 28 U.S.C. § 1915A(a).

upon which relief may be granted[.]"³ This language closely tracks Federal Rule of Civil Procedure 12(b)(6). Accordingly, courts apply the same standard to screening a *pro se* prisoner complaint for sufficiency under Section 1915A(b)(1) as they utilize when resolving a motion to dismiss under Rule 12(b)(6).⁴

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."⁵ The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.⁶ In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.⁷

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.⁸ At step one, the court must "tak[e] note of the elements [the]

---

³ *Id.* § 1915A(b)(1).
⁴ *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); *O'Brien v. U.S. Fed. Gov't*, 763 F. App'x 157, 159 & n.5 (3d Cir. 2019) (per curiam) (nonprecedential); *cf. Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000).
⁵ *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).
⁶ *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).
⁷ *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).
⁸ *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).

plaintiff must plead to state a claim."⁹  Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.¹⁰  Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."¹¹  Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."¹²

Because Pierre proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"¹³  This is particularly true when the *pro se* litigant, like Pierre, is incarcerated.¹⁴

## II. DISCUSSION

Pierre is currently incarcerated at SCI Greene in Waynesburg, Pennsylvania.¹⁵  His lawsuit, however, concerns incidents that allegedly occurred in 2022 at Luzerne County Correctional Facility (LCCF).¹⁶

---

⁹  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).
¹⁰ *Id.* (quoting *Iqbal*, 556 U.S. at 679).
¹¹ *Id.* (quoting *Iqbal*, 556 U.S. at 679).
¹² *Iqbal*, 556 U.S. at 681.
¹³ *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).
¹⁴ *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).
¹⁵ Doc. 1 ¶ 3.
¹⁶ *See generally* Doc. 1; *see id.* ¶ 8.

Pierre alleges that—at some unspecified time in 2022—he was sent to the Special Housing Unit (SHU) for an "unrelated incident."[17] He avers that defendant C.O. Richards placed him in an unsanitary cell that contained "splattered" food as well as urine and human feces "smeared all over the toilet/sink, floor, [and] walls."[18] Pierre does not state when he was placed in this unsanitary cell or how long he was housed in these alleged conditions.

He asserts that, due to his placement in the unsanitary SHU cell and the recent death of his sister, he became "severely depressed."[19] He avers that on an unspecified Tuesday, he requested to speak to a mental health counselor.[20] Richards informed him that he had called the mental health providers and that they said they were going to come to see Pierre but they never came.[21] The next day, Pierre again requested mental health treatment and expressed that he "felt like hurting himself," but once again no mental health staff came to see him.[22]

On Thursday, Pierre again asked Richards to see mental health and informed him that he "felt like killing himself."[23] That day he was seen by mental health counselor "John Doe."[24] Pierre advised the unidentified counselor of the "severe

---

[17] *Id.* ¶ 8.
[18] *Id.* ¶¶ 8-9.
[19] *Id.* ¶ 10.
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.*

anxiety, depression, [and] P.T.S.D. he was suffering" and that he "needed help because he was having suicidal ideation."[25] According to Pierre, the counselor told him that he was going to check Pierre's charts and "would be right back" but he never returned.[26]

On Friday, Pierre once more requested mental health treatment.[27] He claims that he advised Richards of having suicidal ideations due to his sister's death and his conditions of confinement and alleges that Richards "failed to call mental health."[28] Pierre then noticed that mental health counselor "Liz" had arrived on the block.[29] He informed Liz of his suicidal ideations as she walked past his cell but she responded that she "was not doing rounds" and that Pierre "was not on her list of inmates to see."[30] She advised Pierre to "write [her] a request" because she was not on the block to see him and exited the SHU.[31] Later that same evening, Pierre was taken to the SHU shower and given a razor (presumably for grooming) and he proceeded to cut "his arm/forearm/wrist several times in an attempt to commit suicide."[32]

---

[25] *Id.*
[26] *Id.*
[27] *Id.* ¶ 11.
[28] *Id.*
[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] *Id.* ¶ 12.

Pierre was taken to the "Psych Pod" and placed on "Max Watch" by Liz, which included utilization of a "camera cell" and a "smock [and] security blanket."[33] Pierre maintains that the "Max Watch" policy is promulgated by the warden of LCCF. Under this suicide-watch policy, Pierre contends, psychology inmates are observed 24 hours a day for three to seven days by inmate-worker "monitors," including when using the bathroom, showering, and discussing their personal health information.[34] He claims that, due to this policy, when he tried to hang a towel up to cover himself while he was showering, prison staff forced him to remove it and shower in front of various observers.[35]

Pierre sues Richards, the unidentified John Doe mental health counselor, mental health counselor Liz, and the warden of LCCF.[36] He states that he is raising Section 1983 claims under the First, Fourth, Eighth, and Fourteenth Amendments.[37] As best the Court can ascertain, Pierre is asserting the following constitutional tort claims: (1) a purported unconstitutional policy by the warden of LCCF; (2) First Amendment retaliation against Richards and the warden of LCCF; (3) unconstitutional conditions of confinement in violation of the Fourteenth

---

[33] *Id.*
[34] *Id.* ¶ 13.
[35] *Id.* ¶ 14.
[36] *See id.* ¶¶ 4-6.
[37] *See id.* ¶¶ 17-19. Pierre also invokes the Fifth Amendment. *See id.* However, because he is suing only local government officials, he has provided no basis for a claim under the Fifth Amendment, which pertains exclusively to action by the federal government. *See B & G Constr. Co. v. Dir., Office of Workers' Comp. Programs*, 662 F.3d 233, 246 n.14 (3d Cir. 2011).

Amendment[38] against Richards; (4) deliberate indifference to serious medical needs in violation of the Fourteenth Amendment against mental health counselors John Doe and Liz (and possibly Richards); and (5) a Fourth Amendment violation against the warden of LCCF based on purported invasions of privacy.

Many of Pierre's claims suffer from significant pleading deficiencies. The Court will address the sufficiency of his claims in turn.

### A.     Alleged Unconstitutional Policy

Pierre appears to assert that the warden of LCCF has promulgated an unconstitutional policy, although he does not specify what constitutional amendment (or amendments) the policy infringes. The contours of this claim are nebulous, but it seems that Pierre is asserting that the "Max Watch" policy violates LCCF prisoners' constitutional rights. The Court disagrees.

Implementing a policy that requires vigilant, around-the-clock monitoring of detainees or inmates with serious mental health problems who are at a heightened

---

[38]   Although Pierre invokes the Eighth Amendment, he was a pretrial detainee (not a convicted prisoner) at the time of the alleged events, so his conditions-of-confinement and medical indifference claims implicate the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment's prohibition of cruel and unusual punishments. *See Jacobs v. Cumberland County*, 8 F.4th 187, 193-94 (3d Cir. 2021); *Thomas v. Cumberland County*, 749 F.3d 217, 223 n.4 (3d Cir. 2014); *Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005) (*Hubbard I*); *see also Paulino v. Burlington Cnty. Jail*, 438 F. App'x 106 (3d Cir. 2011) (nonprecedential) (explaining that "sentenced prisoners are protected from punishment that is 'cruel and unusual,' while pretrial detainees are protected from any punishment" (citing *Hubbard I*, 399 F.3d at 166-67)).

risk for suicide in no way violates the constitution. In fact, such a policy, which is plainly aimed at protecting the health and safety of suicidal detainees and prisoners, evinces the opposite of deliberate indifference to serious mental health needs. Thus, any such "unconstitutional policy" claim by Pierre related to the warden's "Max Watch" policy will be dismissed with prejudice pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### B. First Amendment Retaliation

Although a prisoner's constitutional rights are necessarily circumscribed, an inmate still retains First Amendment protections when they are "not inconsistent" with prisoner status or with the "legitimate penological objectives of the corrections system."[39] To state a First Amendment retaliation claim, a plaintiff must plausibly plead that (1) "he was engaged in constitutionally protected conduct," (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the plaintiff's protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action.[40]

Pierre asserts retaliation claims against Richards and the warden of LCCF. He first alleges that, when he was sent to the SHU and placed in the initial "lock-

---

[39] *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Newman v. Beard*, 617 F.3d 775, 781 (3d Cir. 2010)).
[40] *Id.* (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Rauser*, 241 F.3d at 333).

8

up strip-cage," (which appears to be different than his eventual unsanitary SHU cell), he complained to Richards about a previous stint in the SHU and the alleged unsanitary conditions that caused a COVID-19 infection.[41]  Pierre contends that Richards responded, "You['re] not at the Hampton Inn or the Ramada, this is lock-up!"[42]  Pierre then requested to speak to the lieutenant and asked "for a grievance," but Richards purportedly denied both requests, stating, "People who file grievances down here do not eat, shower, or go to the yard."[43]  Pierre claims that, in retaliation for requesting a grievance and to speak to a lieutenant, he was placed in the unsanitary SHU cell.[44]

Liberally construed, Pierre's complaint plausibly states a First Amendment retaliation claim against Richards.  Oral grievances by prisoners have been held to implicate protected First Amendment conduct,[45] and Pierre's pleadings can be construed as alleging that he made an oral grievance to Richards about the SHU's conditions and that Richards retaliated against him by assigning him to an exceptionally dirty cell.

Pierre's retaliation claim against the warden, however, comes up short.  Pierre has not plausibly pled an adverse action taken by the warden.  To the extent

---

[41] Doc. 1 ¶ 8.
[42] *Id.*
[43] *Id.*
[44] *Id.* ¶ 9.
[45] *See Mack v. Warden Loretto FCI*, 839 F.3d 286, 301 (3d Cir. 2016).

9

that Pierre contends that being subjected to the "Max Watch" policy amounts to retaliation, that contention fails. Being subject to an across-the-board policy that is intended to protect suicidal prisoners' health and safety is not "adverse" and therefore cannot constitute an actionable "adverse action" for a retaliation claim.

### C. Fourteenth Amendment Conditions of Confinement

When a pretrial detainee asserts a conditions-of-confinement claim, the Due Process Clause of the Fourteenth Amendment requires courts to consider "first, whether any legitimate purposes are served by the[] conditions, and second, whether the[] conditions are rationally related to these purposes."[46] If pretrial detainees are subjected to conditions that are not reasonably related to a legitimate governmental objective, an inference may be made that the purpose of the prison official's action is punishment.[47] Thus, "a particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose."[48] As the Third Circuit instructs, courts

---

[46] *See Hubbard v. Taylor*, 538 F.3d 229, 232 (3d Cir. 2008) (*Hubbard II*) (quoting *Union Cnty. Jail Inmates v. Di Buono*, 713 F.2d 984, 992 (3d Cir. 1983)).
[47] *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 326 (3d Cir. 2020).
[48] *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007) (quoting *Rapier v. Harris*, 172 F.3d 999, 1005 (7th Cir. 1999)).

confronted with a Fourteenth Amendment conditions-of-confinement claim must "consider the totality of the circumstances of confinement."[49]

Pierre's conditions-of-confinement claim against Richards is deficient primarily because it lacks necessary detail. For example, Pierre does not set forth how long he was kept in the alleged unsanitary conditions, whether there were other unoccupied, cleaner cells available in the SHU, how many hours a day he was confined in this cell, or whether he was permitted to clean the cell. In particular, the duration of the alleged constitutional deprivation is a critical factor in the conditions-of-confinement analysis.[50] Thus, as it stands, Pierre has failed to plausibly plead a conditions-of-confinement claim. Nevertheless, it is conceivable that he could allege additional facts that would sufficiently state a claim for relief, so the Court will grant leave to amend this claim.

### D. Fourteenth Amendment Deliberate Indifference to Medical Needs

As noted, Pierre is a pretrial detainee, so his claims implicate the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment's cruel-and-unusual-punishments provision. However, it does not appear that the United States Court of Appeals for the Third Circuit has established or adhered to a different standard with respect to Fourteenth Amendment pretrial detainee medical

---

[49] *Hope*, 972 F.3d at 326 (citing *Hubbard I*, 399 F.3d at 159-60).
[50] *See Thomas v. Tice*, 948 F.3d 133, 139 (3d Cir. 2020) (stressing that "*duration*" of confinement in a dry cell was crucial consideration in Eighth Amendment conditions-of-confinement claim).

care claims versus those raised by incarcerated individuals under the Eighth Amendment.[51] Accordingly, the Court will apply existing Eighth Amendment jurisprudence to Pierre's Fourteenth Amendment medical indifference claims.

In the context of prison medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated."[52] To state an Eighth Amendment deliberate indifference claim regarding inadequate medical care, a plaintiff must plausibly plead "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."[53] A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."[54]

---

[51] This remains so even following the Supreme Court of the United States' decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), which established a different standard for pretrial detainee excessive force claims. *See Thomas v. City of Harrisburg*, 88 F.4th 275, 281 & n.23 (3d Cir. 2023) (applying Eighth Amendment standard to pretrial detainee's medical care claim); *see also Moore v. Luffey*, 757 F. App'x 335, 340 & n.2 (3d Cir. 2019) (nonprecedential) (rejecting plaintiff's argument to apply *Kingsley*'s holding to Fourteenth Amendment medical care claim and instead analyzing under Eighth Amendment jurisprudence); *see also Parker v. Butler County*, 832 F. App'x 777, 780 & n.1 (3d Cir. 2020) (nonprecedential) (applying Eighth Amendment standard to pretrial detainee medical care claim while acknowledging Fourteenth Amendment is source of right); *Miller v. Steele-Smith*, 713 F. App'x 74, 76 n.1, 78 (3d Cir. 2017) (nonprecedential) (same); *Goode v. Giorla*, 643 F. App'x 127, 129 & n.3 (3d Cir. 2016) (nonprecedential) (same); *Edwards v. Northampton County*, 663 F. App'x 132, 136-37 (3d Cir. 2016) (nonprecedential) (citing *Natale v. Camden Cnty Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003)).

[52] *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

[53] *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

[54] *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

Deliberate indifference by prison officials may be evidenced by intentional refusal to provide care known to be medically necessary, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, or denial of reasonable requests for treatment resulting in suffering or risk of injury.[55]  Deliberate indifference to serious medical needs is an exacting standard, requiring a showing of "unnecessary and wanton infliction of pain."[56]  Claims sounding in mere medical negligence will not suffice.[57]

Pierre asserts that he was "deni[ed] mental health care" by two mental health providers at LCCF.  He further alleges that, after being denied appropriate medical attention following repeated requests for care and expressions of suicidal ideation, he attempted to take his own life.  Pierre's complaint plausibly states a Fourteenth Amendment claim for deliberate indifference to serious medical needs against mental health counselors Liz and John Doe.

If Pierre is intending to assert such a claim against Richards, who is not a medical provider, he has not done so.  There are no allegations that Richards was deliberately indifferent to Pierre's mental health beyond a single assertion that, on the Friday when Pierre cut himself, Richards "failed to call mental health" when

---

[55] *See Durmer v. O'Carroll*, 991 F.2d 64, 68 & n.11 (3d Cir. 1993) (quoting *Lanzaro*, 834 F.2d at 346).
[56] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).
[57] *Rouse*, 182 F.3d at 197.

13

asked.[58] Even if true, a single instance of failing to contact mental health services, when viewed alongside Richards' prior appropriate behavior of contacting mental health services every time Pierre asked, does not reflect "unnecessary and wanton infliction of pain." At most it may implicate negligence, which does not rise to the level of a constitutional violation.[59]

### E. Unspecified Fourth Amendment Claim

Pierre attempts to assert a Fourth Amendment claim against the warden of LCCF, seemingly due to alleged privacy violations for being forced to shower, use the bathroom, and discuss mental health information in front of nonmedical suicide-watch observers.[60] The Fourth Amendment to the United States Constitution, in pertinent part, protects against "unreasonable searches and seizures."[61] However, in the prison context, it is well settled that "prisoners have no legitimate expectation of privacy . . . and the Fourth Amendment's prohibition on unreasonable searches [and seizures] does not apply in prison cells[.]"[62] Rather,

---

[58] Doc. 1 ¶ 11.
[59] *Rouse*, 182 F.3d at 197.
[60] *See* Doc. 1 ¶ 19.
[61] U.S. CONST. amend IV.
[62] *Hudson v. Palmer*, 468 U.S. 517, 530 (1984); *Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) ("The *Hudson* court confirmed that a Fourth Amendment right to be free from unreasonable searches and seizures is inconsistent with incarceration."); *see also Humphrey v. Sec'y Pa. Dep't of Corr.*, 712 F. App'x 122, 125 (3d Cir. 2017) (nonprecedential) (holding that seizure of legal materials did not state a cognizable Fourth Amendment claim) (citing *Hudson*, 468 U.S. at 536).

the Fourth Amendment's application to prison settings has been narrowly constrained to issues regarding bodily integrity.[63]

Pierre has not, and cannot, state a Fourth Amendment claim. His allegations regarding observation while showering, using the bathroom, or discussing health information simply do not amount to a Fourth Amendment violation in the prison context, especially with respect to a detainee on suicide watch. Any Fourth Amendment claim will be dismissed with prejudice.

### F. Official Capacity Claims

Pierre sues all Defendants in their individual and official capacities.[64] Suing Defendants in their official capacities is akin to suing the municipality—Luzerne County—itself.[65] To assert a Section 1983 claim against Luzerne County by way of an official capacity claim against a county employee, Pierre must identify a policy or custom fairly attributable to the municipality that caused him constitutional injury.[66] He must also plausibly plead facts showing that each Defendant is a decisionmaker endowed with authority to promulgate or establish an official custom or policy.[67]

---

[63] *See Parkell v. Danberg*, 833 F.3d 313, 324-25 (3d Cir. 2016) (distinguishing *Hudson*'s holding from Fourth Amendment claims regarding invasive searches of prisoners' bodies).
[64] Doc. 1 ¶ 7.
[65] *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 n.55 (1978).
[66] *Id.* at 690-91.
[67] *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) (explaining that a decision to adopt a particular course of action made by the "government's *authorized decisionmakers*" represents an act of official government policy (emphasis added)); *McTernan v. City of York*,

As more fully explained above, Pierre's claim alleging an unconstitutional policy by the warden of LCCF—the only county official named as a defendant who could plausibly have decisionmaking authority—fails to state a constitutional violation. Pierre has not identified any other policies promulgated by the other Defendants, nor has he plausibly alleged that those Defendants would have decisionmaking authority. Accordingly, all official capacity claims will be dismissed with prejudice.

### G. Leave to Amend

Generally, "plaintiffs who file complaints subject to dismissal under [the Prison Litigation Reform Act of 1995] should receive leave to amend unless amendment would be inequitable or futile."[68] As noted above, the Court will permit Pierre to file an amended complaint in the event that he can plausibly allege a Fourteenth Amendment conditions-of-confinement claim against Richards. The other individual capacity claims that are being dismissed—*i.e.*, the unconstitutional policy, retaliation, and Fourth Amendment claims—will be dismissed with prejudice, as leave to amend would be futile.[69] Pierre's official capacity claims will be dismissed with prejudice for the same reason.

---

564 F.3d 636, 658 (3d Cir. 2009) (noting that plaintiff failed to "allege conduct by a municipal decisionmaker" in his attempt to assert municipal Section 1983 liability).
[68] *Grayson*, 293 F.3d at 114.
[69] *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000); *Centifanti v. Nix*, 865 F.2d 1422, 1431 (3d Cir. 1989) ("[T]he district court may properly deny leave to amend where the amendment would not withstand a motion to dismiss.").

If Pierre chooses to file an amended complaint in conformity with this Memorandum, it should be a stand-alone document, complete in itself and without reference to any previous pleadings. The amended complaint should set forth Pierre's claims in short, concise, and plain statements, and in sequentially numbered paragraphs. Pierre should include the claims that have survived this Court's sufficiency review, but he *may not* include claims that have been dismissed with prejudice. He must also sign the amended complaint and indicate the nature of the relief sought.

If Pierre does not timely file a comprehensive amended complaint, dismissal without prejudice of the conditions-of-confinement claim against Richards will automatically convert to dismissal with prejudice and this case will proceed on the following individual capacity claims: (1) First Amendment retaliation against Richards; and (2) Fourteenth Amendment deliberate indifference to serious mental health needs against mental health counselors "Liz" and "John Doe." Pierre will be responsible for identifying the John Doe defendant so that the Court can attempt to effectuate service for this Defendant. If identification is not made within a reasonable amount of time, the Court will be constrained to dismiss the Doe defendant pursuant to Federal Rule of Civil Procedure 4(m).

## III. CONCLUSION

Based on the foregoing, the Court will dismiss in part Pierre's complaint pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted. Pierre, if he is able, may file an amended complaint in accordance with this Memorandum. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge