## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MACARTON N. PIERRE,

      Plaintiff,

    v.

C.O. RICHARDS, *et al.*,

      Defendants.

No. 4:23-CV-02044

(Chief Judge Brann)

## MEMORANDUM OPINION

### OCTOBER 15, 2024

Plaintiff Macarton N. Pierre filed the instant *pro se* Section 1983[1] action in December 2023, alleging constitutional violations by various officials and medical staff at Luzerne County Correctional Facility.  The Court performed mandatory screening and dismissed portions of Pierre's initial complaint pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.  Pierre filed an amended complaint, which is the operative pleading in this action.  Defendant Elizabeth Anselm now moves to dismiss Pierre's medical indifference claim against her or, alternatively, for summary judgment based on Pierre's failure to exhaust administrative remedies.  After careful consideration, the Court will grant Anselm's motion for summary judgment.

---

[1]   42 U.S.C. § 1983.  Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials.  The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law.  *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

## I.     BACKGROUND

Pierre is currently incarcerated at State Correctional Institution, Greene in Waynesburg, Pennsylvania.[2]  His lawsuit, however, concerns incidents that allegedly occurred in 2022 at Luzerne County Correctional Facility (LCCF).[3]

The Court screened Pierre's complaint pursuant to 28 U.S.C. § 1915A(a).[4] In his complaint, Pierre asserted multiple Section 1983 claims including retaliation, deliberate indifference to serious medical needs, an unconstitutional policy at LCCF, unconstitutional conditions of confinement, and an alleged Fourth Amendment privacy violation.[5]  The Court dismissed several of Pierre's Section 1983 claims with prejudice and dismissed his conditions-of-confinement claim without prejudice.[6]  Pierre was given the option of filing an amended complaint or proceeding with the claims that he had plausibly alleged.[7]

Pierre opted to file an amended complaint.[8]  That pleading contains the following plausible Section 1983 claims: (1) Fourteenth Amendment conditions of confinement against defendant C.O. Richards; (2) First Amendment retaliation against Richards; and (3) Fourteenth Amendment deliberate indifference to serious

---

[2]   Doc. 14 ¶ 2.
[3]   *See generally* Doc. 14; *see id.* ¶ 2.
[4]   *See generally* Docs. 10, 11.
[5]   Doc. 10 at 6-7.
[6]   *See* Doc. 11 ¶¶ 6, 8.
[7]   *Id.* ¶¶ 9-10.
[8]   *See generally* Doc. 14.

mental health needs against mental health counselors "Liz" and "Roberts."[9]
Defendant mental health counselor "Roberts," however, was eventually dismissed
from this action pursuant to Federal Rule of Civil Procedure 4(m) for failure to
serve.[10]  Thus, the Fourteenth Amendment medical indifference claim against
mental health counselor "Liz"—identified by defense counsel as Elizabeth
Anselm—is the only medical indifference claim that remains pending.

Anselm now moves to dismiss this claim or, alternatively, for summary
judgment based on Pierre's failure to exhaust administrative remedies.[11]  Upon
receipt of Anselm's motion, the Court issued an order informing Pierre that it
would "'consider exhaustion in its role as a fact finder under Small[ v. Camden
County, 728 F.3d 265 (3d Cir. 2013)]'"[12] and gave him 45 days to respond to
Anselm's motion.[13]  The Court later extended that response time by 14 days,[14] and
then again by an additional 21 days.[15]  Pierre eventually filed his brief in
opposition,[16] and Anselm timely filed a reply.[17]  Anselm's motion, therefore, is
ripe for disposition.

---

[9]   *See* Doc. 15 ¶ 1.
[10]  *See* Docs. 31, 33, 41.
[11]  *See generally* Docs. 28, 29.
[12]  Doc. 30 (citing *Paladino v. Newsome*, 885 F.3d 203, 208, 211 (3d Cir. 2018)).
[13]  *Id.* at 2.
[14]  *See* Doc. 35.
[15]  *See* Doc. 38.
[16]  Doc. 39.
[17]  Doc. 40.

## II.    STANDARD OF REVIEW

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses."[18]  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[19]  Material facts are those "that could alter the outcome" of the litigation, and "disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[20]

At the Rule 56 stage, the Court's function is not to "weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial."[21]  The Court must view the facts and evidence presented "in the light most favorable to the non-moving party" and must "draw all reasonable inferences in that party's favor."[22]  This evidence, however, must be adequate—as a matter of law—to sustain a judgment in favor of the nonmoving party on the claim or claims at issue.[23]  A "scintilla of evidence" supporting the nonmovant's position is insufficient; "there must be evidence on which the jury

---

[18]    *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

[19]    FED. R. CIV. P. 56(a).

[20]    *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (quoting *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).

[21]    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[22]    *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014).

[23]    *Liberty Lobby*, 477 U.S. at 250-57; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-89 (1986).

could reasonably find for the [nonmovant]."[24]  Succinctly stated, summary

judgment is "put up or shut up time" for the nonmoving party.[25]

## III.   DISCUSSION

Anselm attacks Pierre's Section 1983 claim on two fronts.  First, she

cursorily asserts that Pierre's amended complaint fails to state a claim upon which

relief may be granted.[26]  Anselm also maintains that Pierre did not administratively

exhaust any claim against her.[27]  The Court has already screened Pierre's initial

complaint and found that he plausibly alleged a Fourteenth Amendment medical

indifference claim against Anselm.[28]  Pierre's amended complaint is likewise

sufficient in this regard,[29] so the Court need not labor on Anselm's first argument

(which, in any event, is completely undeveloped).  Anselm's claim regarding

administrative exhaustion, however, requires closer inspection.

### A.   Exhaustion for Luzerne County Correctional Facility

The Prison Litigation Reform Act of 1995 (PLRA)[30] requires prisoners to

exhaust available administrative remedies before suing prison officials for alleged

---

[24]  *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Liberty Lobby*, 477 U.S. at 252) (alteration in original).

[25]  *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 391 (3d Cir. 2017) (quoting *Berkeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006)).

[26]  *See* Doc. 29 at 3-6.

[27]  *See id.* at 6-8.

[28]  *See* Doc. 10 at 11-14.

[29]  *See* Doc. 14 ¶¶ 9-10.

[30]  42 U.S.C. § 1997e *et seq.*

constitutional violations.[31]  Proper exhaustion is mandatory, even if the inmate is

seeking relief—like monetary damages—that cannot be granted by the

administrative system.[32]  The exhaustion process a prisoner must follow is

governed by the contours of the prison grievance system in effect where the inmate

is incarcerated.[33]

LCCF has a specific grievance policy in place, Policy Number 95.228.[34]

Under that policy, the inmate must first attempt to informally resolve the issue with

the housing unit officer or counselor via oral complaint or an Inmate Request

Form.[35]  If the issue cannot be resolved with the housing unit officer or counselor,

then the inmate must request to speak with a corporal.[36]

If the inmate is dissatisfied with the results of the informal resolution

process, he or she may submit a written, formal grievance using the designated

Inmate Grievance Form.[37]  This form must be fully completed and submitted

within 15 working days of the incident or occurrence, and it may not contain

multiple unrelated issues.[38]  Inmates must include the date and approximate time of

---

[31]  *See* 42 U.S.C. § 1997e(a); *Ross v. Blake*, 578 U.S. 632, 639, 642 (2016) (explaining that only "available" remedies must be exhausted).
[32]  *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).
[33]  *Jones v. Bock*, 549 U.S. 199, 218 (2007); *see also Woodford*, 548 U.S. at 90-91.
[34]  *See generally* Doc. 29-3.
[35]  *Id.* at 2.
[36]  *Id.* at 3.
[37]  *Id.*
[38]  *Id.*

the incident and may attach supporting documentation.[39]  Prison officials will review the initial grievance and provide a response and their rationale within 10 working days.[40]

If the inmate is dissatisfied with the initial response, he or she may file an appeal to the grievance coordinator—using the designated Inmate Grievance Appeal Form—within 7 working days of receipt of the initial grievance response.[41] After investigation, the Deputy Warden will render a decision on the appeal and provide the inmate with the decision and supporting rationale in writing within 10 working days of receipt of the appeal by the Deputy Warden.[42]

If the inmate is still dissatisfied, he or she may file a final grievance appeal with the grievance coordinator.[43]  This appeal must also use the Inmate Grievance Appeal Form and be filed within 7 working days of receipt of the initial appeal response.[44]  The Director of Correctional Services will review and investigate the final appeal and, within 10 working days of receipt, will provide a written response to the inmate containing the Director's decision and rationale.[45]

---

[39] *Id.*
[40] *Id.* at 4.
[41] *Id.* at 5.
[42] *Id.* at 6.
[43] *Id.*
[44] *Id.*
[45] *Id.* at 8.

### B.    Pierre's Failure to Exhaust

According to a signed statement provided by Christina Oprishko, MA, Treatment Coordinator for Luzerne County Division of Corrections, Pierre did not file a single formal grievance during his time at LCCF.[46]  Pierre does not dispute this fact; instead, he maintains that administrative remedies were "unavailable" to him.[47]  He argues that, when he initially tried to complain about a previous "stint" in the SHU where he had been infected with COVID-19, defendant C.O. Richards retaliated against him by placing him in an extremely dirty cell and kept him there for 13 days, leading to his suicide attempt on June 1, 2022.[48]  He additionally maintains that Richards refused to provide him with grievance forms.[49]

However, as Pierre himself admits, the alleged medical indifference by Anselm occurred on June 1, 2022—the day of his suicide attempt—and following that incident Pierre was "placed on a psych watch" in a "psych pod."[50]  Pierre does not provide any reasoning or evidence regarding why he did not file a formal grievance about the alleged deliberate indifference by Anselm in the 15 working days following his suicide attempt.  As the LCCF grievance policy expressly

---

[46] Doc. 29-2.
[47] "[O]nce the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." *Hardy v. Shaikh*, 959 F.3d 578, 587 (3d Cir. 2020) (quoting *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018)).
[48] *See* Doc. 14 ¶¶ 6-7; Doc. 39 ¶¶ 2, 8; Doc. 39-1.
[49] Doc. 39 ¶ 2; Doc. 14 ¶ 6.
[50] *Id.* ¶ 10; Doc. 39-1.

states, the inmate grievance procedure is intended to be used to assert any "dispute concerning the inmate's health care that has not been resolved through the medical department."[51]

Moreover, to the extent Pierre is broadly contending that the entire grievance process at LCCF was made "unavailable" to him through threats of retaliation by a single corrections officer, he has failed to properly support this argument. To successfully maintain such a claim, a prisoner-plaintiff has the burden to show that (1) "the threat was sufficiently serious that it would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance"; and (2) "the threat actually did deter this particular inmate."[52]

Even assuming Pierre can show the first prong (a sufficiently serious threat), the Court finds by a preponderance of the evidence that he has failed to establish the second, subjective element: that he was actually deterred from lodging a grievance by Richards' conduct. First, Pierre himself contends that part of the reason he did not file formal grievances about the purported conditions at LCCF was that Richards would not provide him with a grievance form,[53] not because he feared retaliation. Second, Pierre concedes that he lodged "oral grievances" with Anselm about her allegedly deficient mental health treatment,[54] further

---

[51] Doc. 29-3 at 9.
[52] *Rinaldi*, 904 F.3d at 269.
[53] *See* Doc. 14 ¶ 6; Doc. 39 ¶ 2.
[54] *See* Doc. 39-1.

undercutting his claim that he was actually deterred from grieving Anselm's conduct by fear of retaliation.  Such oral grievances, however, are insufficient to administratively exhaust this Section 1983 claim because LCCF has specific procedures in place for filing grievances in writing when informal resolution is unsuccessful.  For both reasons, Pierre has failed to show that the alleged threat of retaliation actually deterred him from utilizing the prison grievance process.

Pierre, like other prisoners, had an affirmative obligation under the PLRA to bring his constitutional claim concerning Anselm's mental health treatment (or alleged lack thereof) to the attention of LCCF administrators through the prison's grievance system.  He did not do so, and instead filed a Section 1983 lawsuit in federal court in violation of the PLRA's exhaustion mandate.  Pierre, moreover, has not carried his burden to establish that administrative remedies were unavailable to him.  His Fourteenth Amendment medical indifference claim against Anselm, therefore, is procedurally defaulted and barred.  As a consequence, summary judgment must be granted in Anselm's favor on this claim.

## IV.    CONCLUSION

Based on the foregoing, the Court will grant defendant Anselm's motion for summary judgment.  Pierre failed to administratively exhaust his medical indifference claim against Anselm, and he has not established that administrative

remedies were unavailable.  Summary judgment, therefore, must be granted in Anselm's favor.  An appropriate Order follows.

BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge